**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| DAITO KENTAKU USA, LLC,<br>Plaintiff,<br>v.<br>CRS RB4 HOLDINGS, LC, et al.<br>Defendants. | Civil Action No. 1:24-cv-01538 |

**ANSWER TO COUNTERCLAIM**

On October 8, 2024, Defendants CRS RB4 HOLDINGS, LC ("CRH"), Comstock Partners, LC ("CP"), Comstock Employee Ventures, L.C. ("CEV"), and CP Management Services, LC ("CPM") (collectively "Comstock" or "Defendants") filed an Answer and Affirmative Defenses and Counterclaim in the above-captioned action. Daito Kentaku USA, LLC's ("Daito") files this Answer to Comstock's Counterclaim, setting forth the numbered paragraphs of the Counterclaim followed by its response.

1. This is a declaratory judgment action concerning ownership/membership interests in a Virginia limited liability company, CRS BLVD I, LC ("BLVD"). Under the terms of the limited liability company agreement as amended, Daito's membership interest in BLVD was diluted after CRH paid Daito's proportionate share of a capital contribution, CRH met the business plan and budget for 2019, and Daito failed to further invest with CRH or its affiliates. Accordingly, Daito's membership interest in BLVD has been the subject of a 2x dilution to 29.6%, and CRH owns the remaining 70.4% membership interest in BLVD (CRH owns a 69.9%

membership interest in BLVD and CRS RB4 Manager, LLC, which is a pass-through entity wholly owned by CRH, owns a 0.5% interest in BLVD). However, Daito has recently argued that Daito's membership interest is 40%. Daito's position is contrary to the facts and the express terms of the contract. Daito is 2x diluted. Alternatively, and at minimum, the second amendment to the limited liability company agreement requires a 1.5x dilution of Daito's interest to 34.7%. Accordingly, CRH seeks for this Court to resolve this dispute and declare the rights of CRH and Daito as it relates to their membership interests in BLVD.

**ANSWER:** The allegations in Paragraph 1 set forth arguments and legal conclusions to which no response is required and if a response is deemed required, they are denied.

2. Counterclaimant CRH is a Virginia limited liability company, with its principal place of business at 1900 Reston Metro Plz Fl 10, Reston, VA 20190. CRH's members are Virginia limited liability companies as well. CRH owns a 69.9% membership interest in BLVD and CRS RB4 Manager, LLC, which is a pass-through entity wholly owned by CRH, owns a 0.5% interest in BLVD—thus amounting to a total interest of 70.4%.

**ANSWER:** Daito denies the allegation in Paragraph 2 that Comstock "owns a 69.9% membership interest in BLVD" and further denies the allegation regarding "total interest of 70.4%." The remaining allegations in Paragraph 2 set forth legal conclusions to which no response is required and if a response is deemed required, they are also denied.

3. Counter-Defendant Daito is a Delaware limited liability company with its principal place of business at 360 North Pacific Coast Highway, Ste 2000, El Segundo, CA 90245. According to Daito's allegations in this case, Daito has one member, Daito Trust Construction Co., Ltd, which is a citizen of Japan. Daito owns a 29.6% membership interest in BLVD.

**ANSWER:** Daito denies the allegation that it "owns a 29.6% membership interest in BLVD" and admits the remaining allegations in Paragraph 3.

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity of citizenship between CRH and Daito.

**ANSWER:** Admitted.

5. This Court also has jurisdiction over this matter under 28 U.S.C. § 2201.

**ANSWER:** The allegations contained in Paragraph 5 contain legal conclusions to which no response is required.

6. This Court has jurisdiction over Daito because Daito filed a complaint in this Court and this Counterclaim falls within Federal Rule of Civil Procedure 13.

**ANSWER:** The allegations contained in Paragraph 6 contain legal conclusions to which no response is required.

7. Venue is proper for the same reasons.

**ANSWER:** The allegations contained in Paragraph 7 contain legal conclusions to which no response is required.

8. BLVD is a Virginia limited liability company that was formed on April 16, 2014 pursuant to the Virginia Limited Liability Company Act.

**ANSWER:** Daito admits that BLVD is a Virginia limited liability company that was formed on April 16, 2014. The remaining allegations in Paragraph 8 contain legal conclusions to which no response is required.

9. BLVD was originally formed by Comstock Partners, LC and Comstock Employee Ventures, L.C.

**ANSWER:** Daito admits that the Amended and Restated Limited Liability Company Agreement of CRS BLVD I, LC (the "LLC Agreement") states that BLVD was formed by CP and CEV in April 2014.

10. Comstock Partners, LC and Comstock Employee Ventures, L.C. subsequently assigned their membership interests in BLVD to CRH.

**ANSWER:** Daito admits the LLC Agreement contains statements regarding membership interests and does not admit or deny the allegations contained in Paragraph 10.

11. CRH then issued a 50% interest in BLVD to Daito Asia Investment PTE LTD ("Daito Asia"), and CRH retained a 50% membership interest in BLVD.

**ANSWER:** Daito admits that Daito Asia received a 50% interest in BLVD and does not admit or deny the remaining allegations in Paragraph 11.

12. On June 17, 2015, CRH and Daito Asia entered into the Amended and Restated Limited Liability Company Agreement of CRS BLVD I, LC (the "LLC Agreement").

**ANSWER:** Admitted.

13. A true and correct copy of the LLC Agreement (without its exhibits) is attached as **Exhibit 1**.

**ANSWER**: Admitted.

14. Under the LLC Agreement, CRH and Daito each provided an initial contribution of $35,500,000.

**ANSWER:** Daito denies the allegation that the amount was "$35,000.00" and admits the remaining allegations in Paragraph 14.

15. On August 1, 2016, CRH, Daito, and Daito Asia entered into the First Amendment to Amended and Restated Limited Liability Company Agreement (the "First

Amendment").

**ANSWER:** Daito admits it entered into the First Amendment to Amended and Restated Limited Liability Company Agreement on August 1, 2016 and denies all remaining allegations in Paragraph 15.

16. A true and correct copy of the First Amendment is attached as **Exhibit 2**.

**ANSWER:** Admitted.

17. Pursuant to the First Amendment, Daito Asia assigned and transferred its membership interest in BLVD to Daito, Daito Asia withdrew as a member of BLVD, and Daito assumed all obligations and liabilities of Daito Asia under the LLC Agreement.

**ANSWER:** Admitted.

18. In December 2018, CRH and Daito determined that an additional capital contribution of approximately $20.6 million would be required to, among other items, satisfy the 2018 projected operating cash deficit and debt service coverage ratio financial covenants of the Loan (as that term is defined in the LLC Agreement).

**ANSWER:** Daito admits that the Second Amendment to Amended and Restated Limited Liability Company Agreement (the "Second Amendment") contains a whereas clause that the Members "determined that an additional capital contribution of approximately $20.6 million would be required to, among other items, satisfy the 2018 projected operating cash deficit and debt service coverage ratio financial covenants of the Loan" and denies the remaining allegations in Paragraph 18.

19. Daito requested that CRH fund this additional capital contribution and CRH agreed to fund such additional capital contribution in accordance with the terms of the LLC Agreement and as further amended.

**ANSWER:** Denied.

20. In connection with these developments, CRH and Daito entered into the Second Amendment to Amended and Restated Limited Liability Company Agreement (the "Second Amendment")

**ANSWER:** Daito admits that it entered into the Second Amendment and denies the remaining allegations in Paragraph 20.

21. A true and correct copy of the Second Amendment is attached as **Exhibit 3**.

**ANSWER:** Admitted.

22. Section 1(a) of the Second Amendment amended Section 5.2(e) of the LLC Agreement to provide as follows:

> (e) Loan Additional Capital Contribution. In the event that a Non-Funding Member fails or refuses to fund its portion of a Loan Additional Capital Contribution, and the Funding Member funds its portion of a Loan Additional Capital Contribution, then the Funding Member shall fund the Non-Funding Member's portion of the Loan Additional Capital Contribution. Any amount so funded by the Funding Member shall be treated as having been loaned on a non-recourse basis from the Funding Member to the Non-Funding Member (a "Member Additional Equity Loan"), and then contributed as an Additional Capital Contribution to the Company by the Non-Funding Member. The Loan Additional Capital Contribution, when made, shall result in the following: (x) the Percentage Interests of the Non-Funding Member shall be adjusted by reducing the Percentage Interest of the Non-Funding Member (and increasing the Percentage Interest of the Funding Member by the amount of such reduction) by the amount equal to a (A) the product of 1.0 *multiplied by* the unpaid amount of the Member Additional Equity Loan (plus all accrued and unpaid interest calculated thereon) divided by (B) the aggregate amount of all Capital Contributions made by all Members under Section 5.1 and Section 5.2 (including the effects of the adjustments in subsection (z) below), (y) Distributions of Cash Flow to the Members will thereafter be as set forth in Section 6.2, and (z) the outstanding principal and interest on the Member Additional Equity Loan shall be deemed to have been satisfied, the Non-Funding Member's Additional Capital Contributions shall be deemed reduced by the Member Additional Equity Loan amount, and the Funding Member shall instead be deemed to have made an Additional Capital Contribution in the amount of the Member Additional Equity Loan.

**ANSWER:** The allegations contained in Paragraph 22 purport to quote from a document and therefore no response is required. To the extent a response is deemed required, it is denied.

23. Because Daito did not fund its portion of the approximately $20.6 Million additional capital contribution and CRH funded Daito's portion of this additional capital contribution, Daito's percentage interest in BLVD was subject to a 1x dilution pursuant to this provision.

**ANSWER:** Daito admits its percentage interest in BLVD was reduced in connection with capital contribution issues, but denies all remaining allegations in Paragraph 23.

24. Section 1(d) of the Second Amendment also amended Section 9.2(a) of the LLC Agreement to add the following language:

> In the event that a Investor Member [Daito] fails or refuses to fund its portion of a Loan Additional Capital Contribution and the Administrative Member [CRH] funds its portion of a Loan Additional Capital Contribution and then the Administrative Member funds the Investor Member's portion of the Loan Additional Capital Contribution: The Management Committee thereafter shall consist of three individuals appointed to act as "representatives" of the Person that appointed him or her (the "Representatives") as follows: (i) Investor Member shall be entitled to designate one Representative to represent Investor Member; and (ii) Administrative Member shall be entitled to designate two Representatives to represent Administrative Member. A majority vote of the Representatives appointed to the Management Committee shall constitute the approval of the Management Committee for the purposes hereof.

**ANSWER:** Daito denies this was the only addition to the LLC Agreements and denies all remaining allegations in Paragraph 24 as not requiring a response because they purport to quote a document.

25. Because Daito did not fund its portion of the approximately $20.6 Million additional capital contribution and CRH funded Daito's portion of this additional capital contribution, the Management Committee consists of two CRH representatives and one Daito representative. Accordingly, CRH exercises control over the Management Committee.

**ANSWER:** Daito admits it has one representative on the Management Committee and denies the remaining allegations in Paragraph 25.

26. Section 1(f) of the Second Amendment additionally amended the LLC Agreement to add Section 15.20, which provides:

> (a) In the event the Investor Member [Daito] fails to execute a binding financial commitment and fund an investment of Forty Million Dollars ($40,000,000) or more (the "New Investment") on stabilized asset(s) through Administrative Member [CRH] or its affiliates or commonly controlled entities, by September 30, 2019, the adjustment of the Percentage Interest of the Non-Funding Member provided in Section 5.2(e) herein shall be modified as follows effective as of September 30, 2019:
>
> The Percentage Interests of the Non-Funding Member shall be adjusted by reducing the Percentage Interest of the Non- Funding Member (and increasing the Percentage Interest of the Funding Member by the amount of such reduction) by the amount equal to a (A) the product of 1.5 *multiplied by* the unpaid amount of the Member Additional Equity Loan (plus all accrued and unpaid interest calculated thereon) divided by (B) the aggregate amount of all Capital Contributions made by all Members under Section 5.1 and Section 5.2 (including the effects of the adjustments in subsection (z) below), (y) Distributions of Cash Flow to the Members will thereafter be as set forth in Section 6.2, and (z) the outstanding principal and interest on the Member Additional Equity Loan shall be deemed to have been satisfied, the Non-Funding Member's Additional Capital Contributions shall be deemed reduced by the Member Additional Equity Loan amount, and the Funding Member shall instead be deemed to have made an Additional Capital Contribution in the amount of the Member Additional Equity Loan.
>
> (b) In the event (i) the Investor Member fails to make a New Investment, and (ii) the Administrative Member has (A) met the Business Plan and Budget for 2019 prepared in accordance with Section 9.3, and (B) any additional investment opportunity(ies) presented to the Investor Member by Administrative Member reasonably projects a five percent (5%) yield (annual net operating income divided by total cost of investment) if the opportunity is for stabilized assets; and (C) such additional investment opportunity(ies) does not, after a normal and customary project due diligence process, result in a finding of fact so material and detrimental that it would prevent a ordinary and reasonable institutional or corporate investor from proceeding with an investment; then in such event, the adjustment of the Percentage Interest of the Non-Funding Member provided in Section 5.2(e) herein shall be modified as follows effective as of September 30, 2019:
>
> The Percentage Interests of the Non-Funding Member shall be adjusted by

> reducing the Percentage Interest of the Non- Funding Member (and increasing the Percentage Interest of the Funding Member by the amount of such reduction) by the amount equal to a (A) the product of 2.0 *multiplied by* the unpaid amount of the Member Additional Equity Loan (plus all accrued and unpaid interest calculated thereon) divided by (B) the aggregate amount of all Capital Contributions made by all Members under Section 5.1 and Section 5.2 (including the effects of the adjustments in subsection (z) below), (y) Distributions of Cash Flow to the Members will thereafter be as set forth in Section 6.2, and (z) the outstanding principal and interest on the Member Additional Equity Loan shall be deemed to have been satisfied, the Non-Funding Member's Additional Capital Contributions shall be deemed reduced by the Member Additional Equity Loan amount, and the Funding Member shall instead be deemed to have made an Additional Capital Contribution in the amount of the Member Additional Equity Loan.

**ANSWER:** The allegations contained in Paragraph 26 purport to quote a document and therefore no response is required. To the extent a response is deemed required, it is denied.

27. Daito failed to execute a binding financial commitment and fund an investment of forty million dollars ($40,000,000) or more on stabilized asset(s) through CRH or its affiliates or commonly controlled entities by September 30, 2019.

**ANSWER:** Denied.

28. Accordingly, under Section 15.20(a) of the LLC Agreement as added by the Second Amendment, Daito's percentage interest in BLVD was subject to—at minimum—a 1.5x dilution.

**ANSWER:** Denied.

29. Between the execution of the Second Amendment and September 30, 2019, CRH presented various investment opportunities to Daito, including at least two concrete investment opportunities.

**ANSWER:** Denied.

30. All of the conditions of Section 15.20(b) of the LLC Agreement (as added by the Second Amendment) were satisfied as well:

a. Daito failed to make a new investment;

b. CRH met the Business Plan and Budget for 2019, including related to net operating income, net income, and average occupied rent per square foot;

c. an additional investment opportunity presented to Daito by CRH for stabilized assets reasonably projected a five percent (5%) yield and, after a normal and customary project due diligence process, did not result in a finding of fact so material and detrimental that it would prevent an ordinary and reasonable institutional or corporate investor from proceeding with an investment. For example, the investment opportunity that CRH presented to Daito for the Hartford Building (a property located in the Clarendon area of Arlington, Virginia) met these criteria.

**ANSWER:** Denied.

31. Accordingly, under Section 15.20(b) of the LLC Agreement as added by the Second Amendment, Daito's percentage interest in BLVD was subject to a 2x dilution.

**ANSWER:** Denied.

32. CRH provided the above multi-step dilution options as a show of good faith to Daito so that Daito could avoid the more severe dilution penalties if it strengthened its relationship with CRH or CRH's affiliates.

**ANSWER:** Denied.

33. In September 2020, CRH provided draft 2019 tax documents to Daito, including a Schedule K-1 for Daito, which reflected the 2x dilution of Daito's percentage interest in BLVD, which decreased Daito's percentage interest in BLVD from 50% to 29.6%.

**ANSWER:** Daito admits only it was provided tax documents that reflected a reduction

of Daito's percentage interest in BLVD and denies the remaining allegations in Paragraph 33.

34. CRH also provided audited financial statements to Daito in 2020 reflecting the 2x dilution of Daito's percentage interest in BLVD, and showing the percentage interests in BLVD as 70.4% for CRH and 29.6 % for Daito.

**ANSWER:** Daito admits only it was provided a financial statement reflecting a reduction of Daito's percentage interest in BLVD and denies the remaining allegations in Paragraph 34.

35. CRH and BLVD then filed their 2019 tax returns, which reflected CRH's percentage interest in BLVD as 70.4% and Daito's percentage interest in BLVD as 29.6%.

**ANSWER:** Daito admits only it was provided tax returns reflecting a reduction of Daito's percentage interest in BLVD and denies the remaining allegations in Paragraph 35.

36. Daito did not formally object to these tax documents or assert that they were incorrect.

**ANSWER:** Denied.

37. In 2021, CRH provided 2020 tax documents to Daito, including a Schedule K-1 for Daito, which reflected the 2x dilution of Daito's percentage interest in BLVD, which decreased Daito's percentage interest in BLVD from 50% to 29.6%.

**ANSWER:** Daito admits only it was provided tax documents that reflected a reduction of Daito's percentage interest in BLVD and denies the remaining allegations in Paragraph 37.

38. CRH also provided audited financial statements to Daito in 2021 reflecting the 2x dilution of Daito's percentage interest in BLVD, and showing the percentage interests in BLVD as 70.4% for CRH and 29.6 % for Daito.

**ANSWER:** Denied.

39. CRH and BLVD then filed their 2020 tax returns, which reflected CRH's percentage interest in BLVD as 70.4% and Daito's percentage interest in BLVD as 29.6%.

**ANSWER:** Daito admits only it was provided tax documents that reflected a reduction of Daito's percentage interest in BLVD and denies the remaining allegations in Paragraph 39.

40. Daito did not formally object to these tax and financial documents or assert that they were incorrect.

**ANSWER:** Denied.

41. In 2022, CRH provided 2021 tax documents to Daito, including a Schedule K-1 for Daito, which reflected the 2x dilution of Daito's percentage interest in BLVD, which decreased Daito's percentage interest in BLVD from 50% to 29.6%.

**ANSWER:** Daito admits only it was provided tax documents that reflected a reduction of Daito's percentage interest in BLVD and denies the remaining allegations in Paragraph 41.

42. CRH also provided audited financial statements to Daito in 2022 reflecting the 2x dilution of Daito's percentage interest in BLVD, and showing the percentage interests in BLVD as 70.4% for CRH and 29.6 % for Daito.

**ANSWER:** Denied.

43. CRH and BLVD then filed their 2021 tax returns, which reflected CRH's percentage interest in BLVD as 70.4% and Daito's percentage interest in BLVD as 29.6%.

**ANSWER:** Daito admits only it was provided tax documents that reflected a reduction of Daito's percentage interest in BLVD and denies the remaining allegations in Paragraph 43.

44. Daito did not formally object to these tax and financial documents or assert that they were incorrect.

**ANSWER:** Denied.

45. In 2023, CRH provided 2022 tax documents to Daito, including a Schedule K-1 for Daito, which reflected the 2x dilution of Daito's percentage interest in BLVD, which decreased Daito's percentage interest in BLVD from 50% to 29.6%.

**ANSWER:** Daito admits only it was provided tax documents that reflected a reduction of Daito's percentage interest in BLVD and denies the remaining allegations in Paragraph 45.

46. CRH also provided financial statements to Daito in 2023 reflecting the 2x dilution of Daito's percentage interest in BLVD, and showing the percentage interests in BLVD as 70.4% for CRH and 29.6 % for Daito.

**ANSWER:** Daito admits only it was provided a financial statement reflecting a reduction of Daito's percentage interest in BLVD and denies the remaining allegations in Paragraph 46.

47. CRH and BLVD then filed their 2022 tax returns, which reflected CRH's percentage interest in BLVD as 70.4% and Daito's percentage interest in BLVD as 29.6%.

**ANSWER:** Daito admits only it was provided tax documents that reflected a reduction of Daito's percentage interest in BLVD and denies the remaining allegations in Paragraph 47.

48. Daito did not formally object to these tax and financial documents or assert that they were incorrect.

**ANSWER:** Denied.

49. In 2024, Daito sent CRH a letter asserting that it held a 40% percentage interest in BLVD and that its percentage interest in BLVD had not been subject to any 1.5x or 2x dilution.

**ANSWER:** Daito admits only that it has corresponded with Comstock regarding its 40 percentage interest in BLVD and its continued rejection of any assertion of any other percentage

interest, denying all remaining allegations in Paragraph 49.

50. On August 30, 2024, Daito filed its Complaint in this case, alleging that it possesses a 40% percentage interest in BLVD.

**ANSWER:** Admitted.

51. Section 15.12 of the LLC Agreement provides that "[i]n the event of any dispute between the parties hereto or the taking of any action to enforce any of the terms or provisions hereof, the prevailing party shall be entitled to recover from the other party reasonable attorney's fees and costs incurred in connection therewith."

**ANSWER:** The allegations set forth in Paragraph 51 purport to restate a document and therefore no response is required.

52. CRH incorporates the allegations above as if fully set forth herein.

**ANSWER:** Daito incorporates its answers to Paragraphs 1 through 51 as if fully set forth herein.

53. Daito alleges that it has a 40% membership interest in BLVD.

**ANSWER:** Daito admits this allegation is contained in its Complaint against Comstock and denies all remaining allegations in Paragraph 53.

54. CRH asserts that Daito has a 29.6% membership interest in BLVD due to the dilution events described above, which have subjected Daito to a 2x dilution of its membership interest.

**ANSWER:** The allegations contained in Paragraph 54 purport to restate allegations or assertions of Comstock and therefore no response is required. If a response is deemed required, it is denied.

55. Therefore, there is an actual controversy between CRH and Daito as to their (particularly, Daito's) membership interests in BLVD, which is appropriate for declaratory judgment under 28 U.S.C. § 2201.

**ANSWER:** The allegations contained in Paragraph 55 contain a legal conclusion to which no response is required.

56. Alternatively, and solely in the alternative in the event that the Court does not grant CRH's requested declaration that Daito has a 29.6% interest in BLVD, CRH asserts that Daito's interest has been the subject of—at minimum—a 1.5x dilution under Section 1(f) of the Second Amendment and Section 15.20 of the LLC Agreement, and thus Daito's membership interest in BLVD is (at most) 34.7%.

**ANSWER:** The allegations contained in Paragraph 56 purport to restate allegations or assertions of Comstock and therefore no response is required. If a response is deemed required, it is denied.

57. Therefore, there is an actual controversy between CRH and Daito as to their (particularly, Daito's) membership interests in BLVD, which is appropriate for declaratory judgment under 28 U.S.C. § 2201.

**ANSWER:** The allegations contained in Paragraph 57 contain a legal conclusion to which no response is required.

**Prayer for Relief**

WHEREFORE, for the foregoing reasons, CRH prays that the Court:

A. Declare that Daito has a 29.6% membership interest in BLVD;

B. In the alternative, declare that Daito has a 34.7% membership interest in BLVD;

C. Award CRH its attorney's fees and costs pursuant to Section 15.12 of the LLC

Agreement; and

D. Grant such further relief to CRH as this Court deems just and proper.

**ANSWER:** Daito incorporates its answers to Paragraphs 1 through 57 as if fully set forth herein and denies that Comstock is entitled to any of the relief it seeks.

## DEMAND FOR ATTORNEYS' FEES

Pursuant to the Section 15.12 of the Amended and Restated Limited Liability Company Agreement, which provides that the prevailing party in a dispute shall be entitled to recover reasonable attorney's fees and costs from the other party, Daito hereby demands its attorney's fees and costs for all disputes between it and Comstock.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Counterclaim- Plaintiffs have failed to state any claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Counterclaim- Plaintiffs' claim is barred by the doctrine of estoppel.

### THIRD AFFIRMATIVE DEFENSE

Counterclaim- Plaintiffs' claim is barred by the doctrine of laches.

### FOURTH AFFIRMATIVE DEFENSE

Counterclaim- Plaintiffs' claim is barred by the doctrine of unclean hands.

Daito reserves the right to supplement its affirmative defenses.

Dated: October 29, 2024 Respectfully submitted,

/s/Shirin Afsous
Alexander X. Jackins, VSB No. 45501
Shirin Afsous, VSB No. 89999
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Telephone: 703.749.1300
Facsimile: 703.749.1301
Email: jackinsa@gtlaw.com
shirin.afsous@gtlaw.com
Pamela J. Marple, Mitsuru Tadatsu
(*pro hac vice* application forthcoming)
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Telephone: 202.331.3100
Facsimile: 202.331.3101
Email: pamela.marple@gtlaw.com
tadatsum@gtlaw.com

*Counsel for DAITO KENTAKU USA, LLC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of October, 2024, I caused a copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which then sent a notice of filing (NEF) to the parties of record.

/s/ *Shirin Afsous*
Shirin Afsous